UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TUDOR INSURANCE CO.,                                      :

                        Plaintiff,                              :                    <u>OPINION AND ORDER</u>

         -v.-                                                 :

                                                 12 Civ. 3844 (LTS) (GWG)

STAY SECURE CONSTRUCTION CORP.; JOSHUA        :
WALD; SS BRIDGING & SCAFFOLDING, INC.;
AMSTERDAM RESTORATION CORP.; PATRICIO         :
MARIN; AND LUKASZ SALATA,
                                                  :

                   Defendants.                             :
------------------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Tudor Insurance Company ("Tudor") brought this action seeking a declaration that it has

no obligation to defend or indemnify Stay Secure Construction Corporation ("Stay Secure"),

which is a defendant both in this case and in separate personal injury lawsuits brought in New

York State Supreme Court by Patricio Marin and Lukasz Salata.  Before the instant action was

filed, Tudor retained a law firm to investigate whether Marin's and Salata's injuries were

covered under Stay Secure's insurance policies.  That law firm hired an investigator to look into

this question.  The investigator prepared two investigative reports, which Tudor has produced in

redacted form to Salata — who is also a defendant in this law suit — on the grounds that the

redactions are protected by the attorney work-product doctrine.  Salata has moved to compel

production of these redactions.  For the reasons stated below, Salata's motion to compel is

granted.

I.      <u>BACKGROUND</u>

       Stay Secure purchased insurance policies from Tudor that contained a "Classification

Limitation endorsement" that did not cover "renting and erecting scaffolds for others to use."

See Affirmation in Opposition, filed Dec. 27, 2012 (Docket # 42) ("Nicolello Aff."), ¶ 4.  Also,

Stay Secure "failed to disclose on its application [for insurance] that it was in the business of

renting and erecting scaffolding and bridging at work sites."  Complaint, filed May 15, 2012

(Docket # 1), ¶ 55; see also Nicolello Aff. ¶ 4.

On July 16, 2011, Marin allegedly sustained injuries after falling off scaffolding while

working at 87A Guernsey Street in Brooklyn.  See Verified Complaint, Marin v. Wald, Index

No. 302134-2012 (Bronx Cnty. Sup. Ct. Mar. 5, 2012) (annexed as part of Ex. A to Nicolello

Aff.), ¶¶ 30, 34–35.  Stay Secure was purportedly hired to act as the general contractor or

construction manager at the site and agreed to provide certain work, labor, services, or materials

with respect to the construction.  Id. ¶¶ 45–47.  On March 5, 2012, Marin sued Stay Secure and

others in Bronx County Supreme Court for negligence, as well as for violations of New York

Labor Law, the Industrial Code of New York State, and provisions of the Occupational Safety &

Health Administration.  Id. ¶ 59.

Similarly, on October 14, 2011, Salata allegedly sustained injuries at 29 King Street in

Manhattan after falling from a higher level of multi-level scaffolding to a lower level.

See Verified Complaint, Salata v. King St. Condo. Corp., Index No. 150868/2012 (N.Y. Cnty.

Sup. Ct. Mar. 15, 2012) (annexed as part of Ex. A to Nicolello Aff.), ¶¶ 3, 12–13.  Salata brought

suit against Stay Secure on March 15, 2012 in New York County Supreme Court alleging

negligence and violations of the New York Labor Law.  Id. ¶ 14–22.

A claims consultant for Tudor, Steve Niehaus, retained the law firm Congdon, Flaherty,

O'Callaghan, Reid, Donlon, Travis & Fishlinger ("Congdon, Flaherty") to provide advice as to

whether Tudor's insurance policies covered the Marin and Salata lawsuits.  See Deposition of

Steve Niehaus, dated Nov. 29, 2012 (annexed as Ex. B to Reply Affirmation, filed Jan. 14, 2013

2

(Docket # 47) ("Fischman Aff.")) ("Niehaus Dep."), at 5:16–18, 41:1–21.  Tudor assigned a different claims consultant, Rick Hazard, to handle the defense of Stay Secure in the personal injury actions.  Id. at 111:11–112:7.  Hazard retained a different law firm to defend Stay Secure in the personal injury actions.  Id. at 49:15–20, 111:21–23.

Congdon, Flaherty later hired Daniel J. Hannon & Associates Inc. ("Hannon") to conduct an investigation.  Id. at 41:14–42:3.  Before beginning its investigation, Hannon began "develop[ing] strategies to approach the insured," which focused upon the fact that the insurance policies did not cover Stay Secure leasing or selling scaffolding to third parties.  See Initial Report, dated Apr. 11, 2012 (annexed as Ex. C.1 to Nicolello Aff.) ("Apr. 11 Report"), at 2. Hannon produced two reports, dated April 11, 2012 and April 17, 2012.  See Nicolello Aff. ¶ 7; Apr. 11 Report; Interim Report, dated Apr. 17, 2012 (annexed as Ex. C.2 to Nicolello Aff.) ("Apr. 17 Report").  Hannon's investigation resulted in two reports, which included interviews with Dennis Clarke, the president of Stay Secure, and his brother Billy Sinclair (a/k/a Mike Clarke).  See Apr. 11 Report; Apr. 17 Report.

On May 15, 2012, shortly after these reports were produced, Tudor filed this action against Stay Secure, Marin, and Salata, among others, seeking a declaration that it had no duty under the insurance policies to defend or indemnify Stay Secure in the personal injury actions. See Compl. ¶ 1.  Stay Secure failed to respond to the complaint, resulting in the entry of default. See Clerk's Certificate, filed Sept. 20, 2012 (Docket # 32).  Salata answered and served document requests on Tudor.  See Answer, filed July 5, 2012 (Docket # 6); Response to Notice to Produce, dated Oct. 4, 2012 (annexed as part of Ex. B to Nicolello Aff.) ("Response").  In response to these document requests, Tudor produced Hannon's investigative reports but with numerous redactions.  Response at 2–3.  The redactions relate to, among other things, whether

3

Stay Secure inspected scaffolding after erecting it at work sites, see Apr. 11 Report at 10, 12; Apr. 17 Report at 8, 16; whether it supervised the construction at the work sites, Apr. 11 Report at 14; Apr. 17 Report at 7; and whether Clarke or Sinclair were aware of the incidents resulting in Marin's and Salata's injuries, Apr. 11 Report at 14–15, 21, 22–23; Apr. 17 Report at 17.

Tudor asserts that the redactions constitute attorney work product. See Privilege Log, dated Oct. 4, 2012 (annexed as part of Ex. B to Nicolello Aff.) ("Privilege Log"), at 4; Response at 2. By letter dated December 10, 2012, Salata sent a letter to the Court raising this dispute See Letter from David J. Fischman to Honorable Laura Taylor Swain, filed Dec. 14, 2012 (Docket # 40). We ordered that Salata's letter be treated as a motion to compel to the extent that Tudor was asserting privilege or work product protection. See Order, filed Dec. 17, 2012 (Docket # 39). On December 27, 2012, Tudor opposed the motion to compel. See Nicolello Aff.; Plaintiffs' Memorandum of Law in Opposition to Motion to Compel, filed Dec. 27, 2012 (Docket # 44) ("Opp."). Salata replied on January 11, 2013. See Fischman Aff.; Defendant Salata's Reply Memorandum of Law in Support of Motion to Compel, filed Jan. 14, 2013 (Docket # 48).

II.    DISCUSSION

While state law governs the question of attorney-client privilege in a diversity action, federal law governs the applicability of the work product doctrine. See Allied Irish Banks v. Bank of Am., N.A., 240 F.R.D. 96, 105 (S.D.N.Y. 2007); accord Danza v. Costco Wholesale Corp., 2012 WL 832289, at *1 (E.D.N.Y. Mar. 12, 2012) (citing cases). The Court therefore looks to federal law to determine if plaintiff has met its burden of establishing the applicability of the work product doctrine.

4

The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides that a party is not entitled to obtain discovery of "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" unless a showing of substantial need and lack of undue hardship is made.  The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye towards litigation,' free from unnecessary intrusion by his adversaries."  United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510–11 (1947)); accord In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383–84 (2d Cir. 2003).

Under Rule 26(b)(3), the party asserting work product protection "bears the burden of establishing its applicability to the case at hand."  In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d at 384 (citing cases).  The party asserting the protection must show "that material it seeks to protect (1) was prepared in anticipation of litigation and (2) was prepared by or for a party, or by his representative."  Koch v. Greenberg, 2012 WL 1449186, at *5 (S.D.N.Y. Apr. 13, 2012) (citing In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d at 383–84).

A document is prepared in anticipation of litigation if "'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  Adlman, 134 F.3d at 1202 (emphasis in original) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024, at 343 (1994)).  Adlman established that documents prepared both for litigation and business purposes may be protected under Rule 26(b)(3).  Id. at 1195.  Whether work product protection applies turns on whether the material "would have been

prepared irrespective of the expected litigation . . . ."  Id. at 1204.  Indeed, even where "[t]here is

little doubt under the evidence that [a party] had the prospect of litigation in mind when it

directed the preparation of the" document, id. at 1204, or that "such documents might also help

in preparation for litigation," id. at 1202, work product protection is not available for

"documents that are prepared in the ordinary course of business or that would have been created

in essentially similar form irrespective of litigation."  Id.; accord Int'l Design Concepts v. Saks

Inc., 2006 WL 1564684, at *1 (S.D.N.Y. June 6, 2006);  Gulf Islands Leasing, Inc. v.

Bombardier Capital, Inc., 215 F.R.D. 466, 474–75 (S.D.N.Y. 2003); Stephenson Equity Co. v.

Credit Bancorp, Ltd., 2002 WL 59418, at *2 (S.D.N.Y. Jan. 16, 2002).

       In this case, Tudor has conceded that the vast bulk of Hannon's investigation regarding

insurance coverage does not enjoy work product protection.  Indeed, it has produced without

objection those portions of the reports that it views as relating to the coverage question.  This

position is consistent with case law regarding work product protection claims as they relate to

investigations by insurance companies.  Courts have recognize that "documents prepared in the

ordinary course of an insurer's business (which by its nature, involves claim investigation and

analysis) are not protected from discovery," even when they are provided to or prepared by

counsel.  OneBeacon Ins. Co. v. Forman Int'l, Ltd., 2006 WL 3771010, at *5 (S.D.N.Y. Dec. 15,

2006) (internal quotation marks and brackets omitted) (citing cases).  Thus, as a general rule, an

insurance company's investigation "undertaken to determine whether there is coverage, whether

the claim should be paid, and whether a subrogation claim could be pursued, is not undertaken in

anticipation of litigation."  Selective Ins. Co. of Am. v. Swarey, 2011 WL 240750, at *1

(W.D.N.Y. Jan. 24, 2011) (citation and internal quotation marks omitted).

By seeking to protect certain portions of Hannon's investigation, Tudor is apparently arguing that these particular portions were prepared in "anticipation of litigation" while at the same time conceding that the remaining parts of the investigatory reports were not.  See Nicolello Aff. ¶ 9.  But Tudor has provided no competent evidence to support its implicit factual argument that the Hannon reports would not have been prepared "in essentially similar form," Adlman, 134 F.3d at 1202, had the personal injury actions not already been filed.  Indeed, Tudor submits not a single affidavit from anyone at Hannon, the Congdon, Flaherty firm, or Tudor on this question.  Because Tudor bears the burden of proof on this issue, In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d at 384, its effort to protect the redacted portions necessarily fails simply based on this lack of proof.

Moreover, the circumstances surrounding the production of the reports similarly point to the conclusion that the reports would have been prepared in the same form even if the personal injury actions had not yet been filed.  Tudor assigned separate claims consultants and separate counsel for the coverage action and for the defense of Stay Secure in the personal injury actions. Niehaus Dep. at 111:11–112:7.  Niehaus, the claims consultant responsible for the coverage action, retained Congdon, Flaherty as coverage counsel.  See id. at 41:1–21.  Congdon, Flaherty then hired Hannon to conduct an investigation.  See id. at 41:14– 42:3.  There would have been no reason for Hannon to investigate anything other than the coverage issue.  It is hardly surprising that there are portions of the reports that discuss the facts of the personal injury claims given that Hannon "plainly would have had to conduct some investigation of the underlying occurrence" in the ordinary course of its business of determining the coverage question.  Mount Vernon Fire Ins. Co. v. Platt, 1999 WL 892825, at *3 (S.D.N.Y. Oct. 19, 1999).  Thus, there is no reason to believe that Hannon's reports would not have been prepared in the same form even

7

if the personal injury actions had not been filed.  See id. (insurer's investigation into facts of lawsuit against insured was done in ordinary course of business and thus not work-product protected even though the underlying lawsuit had already been filed at the time of the investigation).

Tudor argues that the work product doctrine shields information in the investigative reports relating to liability in the personal injury actions because Stay Secure's and Salata's "interests are diametrically opposed" and "[a]ny information obtained by . . . Salata relating to liability in the underlying actions will certainly be used against the insured . . . ."  Opp. at 6 (emphasis omitted).  To support this argument, Tudor cites to cases where courts in coverage actions ordered that an insurer's investigative reports relating to liability in an underlying lawsuit be produced to the insured but not to the plaintiff in the underlying case.  See Opp. at 5–6 (citing to U.S. Underwriters Ins. Co. v. Ziering, 2008 WL 2230688, at *4 (E.D.N.Y. May 28, 2008) and Tudor Ins. Co. v. McKenna Assocs., 2003 WL 21488058, at *3 (S.D.N.Y. June 25, 2003)).  Such cases have no relevance here, however, because this holding could not cure Tudor's failure to explain why the reports at issue in this case would not have been prepared in the same form regardless of the coverage action.  For this reason alone, Tudor's efforts to protect the redactions as work product must fail.

In any event, the Ziering and McKenna Associates cases address an entirely different question.  In Ziering and McKenna Associates, the insurer attempted to assert work product protection over materials arising out of its attorney-client relationship with the attorneys it had also retained to defend the insured.  See Ziering, 2008 WL 2230688, at *3; McKenna Assocs., 2003 WL 21488058, at *1, *3.  In requiring disclosure of documents to the insured, Ziering and McKenna Associates reasoned that while an attorney may represent both the insurer and the

8

insured, "'the attorney's "paramount client" is the insured,'" Ziering, 2008 WL 2230688, at *3 (quoting McKenna Assocs., 2003 WL 21488058, at *2), and thus "documents prepared by underlying counsel, which were drafted primarily on behalf of the" insured, could not be withheld from the insured in the coverage action. Id. Ziering and McKenna Associates did not extend this logic to the plaintiffs in the underlying lawsuits simply because those plaintiffs obviously had no attorney-client relationship with the insureds' counsel. Ziering, 2008 WL 2230688, at *4; McKenna Assocs., 2003 WL 21488058, at *3. Here, by contrast, the documents at issue were prepared at the behest of Tudor's attorneys in the coverage action, Congdon, Flaherty, and not by Stay Secure's attorneys in the personal injury actions. See Niehaus Dep. at 41:1–13. Any work product protection that would attach to the reports arises out of Congdon, Flaherty's efforts as attorney for Tudor, not as attorney for Stay Secure. Thus, the reasoning adopted in Ziering and McKenna Associates — which resulted in production of documents to the insured but not to the plaintiff in the underlying lawsuit — is simply inapplicable here.

In sum, Tudor has failed to carry its burden of proving that the Hannon reports would not have been prepared in essentially similar form regardless of the existence of the personal injury actions. Accordingly, Salata's motion to compel is granted.[1]

IV.   CONCLUSION

The redacted portions of the documents at issue shall be produced within seven days of this Opinion and Order.

---

[1] Tudor argues in passing that the redacted portions of the Apr. 11 and Apr. 17 Reports are "irrelevant" to this case because the withheld portions relate only to liability in the underlying tort lawsuits, and do not bear on whether the insurance policies cover the Marin and Salata Actions. Opp. at 7. In light of the fact that the redacted materials are integrated into the relevant and non-privileged material, and that there is no burden in producing these materials, they must be produced to Salata for completeness purposes. See generally Fed. R. Evid. 106.

SO ORDERED.

Dated: February 27, 2013
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge